IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


Shane Dawson,                         Civil No. 08-6151-AA
                                          OPINION AND ORDER
        Plaintiff,

    vs.

Entek International, a Delaware
LLC,

        Defendant.
_____

James S. Davis
Lafky & Lafky
429 Court Street NE
Salem, Oregon 97301
        Attorney for plaintiff

Dennis E. Westlind
Stoel Rives LLP
900 SW Fifth Avenue, Suite 2600
Portland, Oregon 97204
        Attorney for defendant



AIKEN, Judge:



Page 1 - OPINION AND ORDER

Pursuant to Fed. R. Civ. P. 56, defendant moves for summary judgment on plaintiff's claims for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and Or.Rev.Stat. § 659A.  Defendant also moves for summary judgment on plaintiff's state claims for intentional infliction of emotional distress, reckless infliction of emotional distress, and wrongful discharge.  For the reasons set forth below, the defendant's motion is granted in its entirety and this case is dismissed.

<u>BACKGROUND</u>

Plaintiff was employed at defendant Entek International (Entek) as a temporary employee from April 13, 2007, to May 22, 2007.  Plaintiff, a male, worked on the production line with 24 other employees, all of whom were also male.  Plaintiff is a homosexual and believes that he does not exhibit traits of masculinity but also does not appear effeminate. (Pl.'s Dep. 187:13-20, 191:24-192:11.)  Throughout plaintiff's employment, comments were made by his co-workers, Josh Dobbs, Jeremy Seibert, and Troy Guzon regarding plaintiff's sexual orientation. (Pl.'s Dep. 60:4-21, 67:12-15.)  Specifically, they called plaintiff a "fag," "homo," "Tinker Bell," and "queer". (Pl.'s Dep. 75:12-17; Pl.'s Decl. ¶ 19.)  Plaintiff's co-workers knew of plaintiff's sexual orientation because plaintiff, his partner, Josh Dobbs, and a former co-worker, Travis Etherton, were patrons at the same

bar. (Pl.'s Dep. 58:22-25.)  On May 19, 2007, after about a week
and a half of being subjected to these comments, plaintiff felt
stressed and decided to take the day off. (Pl.'s Dep. 90:13-17.)
On May 19, 2007, plaintiff was scheduled to work a 12-hour shift
beginning at 6:00 p.m. to 6:00 a.m. the following day.  Plaintiff
called Entek 30 minutes prior to the start of his shift and spoke
to an employee who worked in the laboratory.  He informed this
employee that he would not work his scheduled shift; plaintiff
does not recall this employee's name. (Pl.'s Dep. 87:21-88:9.)
Plaintiff acknowledges that he did not comply with Entek's call
in procedure for unscheduled absences, which requires that
employees call one hour prior to the start of their shift and
report their absence to a supervisor or designee. (Pl.'s Dep.
88:14-89:3.)  This procedure is to ensure that supervisors can
make proper staffing adjustments as the absence of two employees
could shut down an entire production line. (Campbell Decl. ¶ 5.)
Entek's Absence Report indicated that plaintiff did not show up
for his shift and did not call in his absence.

On May 21, 2007, shortly before 8:00 a.m., Oakley Elliott
(Elliott), Safety Manager and acting supervisor at the time of
plaintiff's absence, approached Margaret Campbell (Campbell),
Human Resources (HR) Director, and informed Campbell that
plaintiff did not show up for his shift and did not call in his
absence.  Elliott suggested that plaintiff's employment be

terminated and Campbell agreed.  Both Campbell and Elliott informed Rob Shimmin (Shimmin), Plant Manager, of plaintiff's "no call/no show" and Shimmin agreed that plaintiff's employment should be terminated.  On or around this time, plaintiff was meeting with Susan Monarch (Monarch), HR assistant, to inform her of the comments made by his co-workers.  Monarch took notes of the complaint and the people involved and forwarded the information to Campbell.

On May 22, 2007, plaintiff met with Elliott and Campbell who informed him that his employment was terminated due to his "no call/no show" violation.  That same violation prompted the termination of two other employees. (Campbell Decl. ¶ 11.)

On May 24, 2007, Campbell began investigating plaintiff's complaint by meeting with the employees whom plaintiff indicated had used the offensive language.  Campbell informed those employees that their behavior was unacceptable and notified their supervisors and members of the management group.  Although plaintiff was no longer employed at Entek, Campbell continued to checked-in with the employees' supervisors to ensure that they were no longer using offensive language.  Entek also sent out newsletters discussing discrimination and performed training on fair and equal treatment.


<u>STANDARDS</u>


Page 4 - OPINION AND ORDER

_____Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a mater of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The nonmoving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 630. In employment discrimination cases, the requirements to obtain

Page 5 - OPINION AND ORDER

summary judgment against a plaintiff's prima facie case are
rigorous. <u>Garner v. Motorola, Inc.</u>, 95 F.Supp.2d 1069, 1075 (D.
Ariz. 2000) (citing <u>Schnidrig v. Columbia Mach., Inc.</u>, 80 F.3d
1406, 1410 (9th Cir. 1996) ("[W]e require very little evidence to
survive summary judgment in a discrimination case, because the
ultimate question is one that can only be resolved through a
searching inquiry-one that is most appropriately conducted by the
factfinder, upon full record.")).

<u>DISCUSSION</u>

I. Gender Discrimination Under 42 U.S.C. § 2000e and Or. Rev.
Stat. § 659A.030.

Title VII makes it unlawful for an employer "to discriminate
against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin[.]"
42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for
an employer to discriminate against any employee because the
employee has opposed an unlawful employment practice or "made a
charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under this subchapter." 42
U.S.C. § 2000e-3.  Because the Oregon Revised Statutes § 659A.030
was modeled after Title VII, plaintiff's state and federal gender
discrimination claims can be analyzed together.

A. <u>Disparate Treatment</u>

Page 6 - OPINION AND ORDER

To prevail on a claim of disparate treatment based on gender, plaintiff must offer evidence that raises an inference of discrimination; that is where the actions of the employer, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978).  This may be accomplished by establishing a prima facie case of discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); or by offering direct or circumstantial evidence of employer's discriminatory intent. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

To establish a prima facie case under McDonnell Douglas, the plaintiff must show that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) he was treated differently than a similarly situated employee who does not belong to the same protected class. Cornwell, 439 F.3d at 1028 (citing McDonnell Douglas, 411 U.S. at 802).  The degree of proof necessary to establish a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Once a prima facie case has been established by the plaintiff, the burden shifts to the defendant to show a

"legitimate, non discriminatory reason for the challenged
action." Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24
(9th Cir. 2000).  Plaintiff contends that Oregon courts do not
require this burden shifting approach for state claims.
Nevertheless, it is maintained for assessing Oregon employment
discrimination claims brought in federal court.  "The standard
for establishing a prima facie case of discrimination under
Oregon law is identical to that used in federal law." Tyson v.
Or. Anesthesiology Group, P.C., No. 03-1192, 2008 WL 2371420, at
*6 (D. Or. June 6, 2008)(quoting Snead v. Metropolitan Property
Casualty Insurance Co., 237 F.3d 1080 (9th Cir.), cert. denied,
534 U.S. 888 (2001)).

        Once the defendant meets this burden, the plaintiff must
then produce evidence that the employer's reason is pretextual.
"To satisfy that burden, and survive summary judgment,
[plaintiff] must produce enough evidence to allow a reasonable
factfinder to conclude *either*: that the alleged reason for
[plaintiff's] discharge was false, *or* that the true reason for
his discharge was a discriminatory one." Nidds v. Schindler
Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996)(emphasis in
original).

*I. Circumstantial Evidence*

        Plaintiff fails to demonstrate a genuine issue of material
fact with respect to his disparate treatment claim under the

McDonnell Douglas framework because he failed to show that he was treated differently because of his gender.

Although, plaintiff claims he belongs to a protected class because he is a homosexual male, sexual orientation is not a protected class under Title VII discrimination claims. Therefore, plaintiff's Title VII claim of gender discrimination rests on plaintiff being a male.  Plaintiff has satisfied the first element of a prima facie case.

Plaintiff was employed as a temporary production line employee at Entek.  At the start of his employment, plaintiff signed an acknowledgment stating that he had read and understood the contents of the employee handbook, which sets out the procedure for reporting unscheduled absences.  Plaintiff admitted in his deposition that, although he understood the importance of attendance at Entek, he failed to follow this procedure when he did not show up for his shift on May 19, 2007.  Plaintiff admitted that he called Entek 30 minutes prior to the start of his shift and reported his absence to an Entek employee working in another department. (Pl.'s Dep. 130:9-133:19.)  Plaintiff acknowledges that he did not comply with Entek's procedure.

However, plaintiff did not receive any complaints regarding his job performance prior to his absence.  This raises an issue of material fact as to whether plaintiff had performed his job satisfactorily.  Due to the minimal showing necessary to

establish a prima facie case, plaintiff has satisfied the second element of a prima facie case.

Both parties agree that plaintiff suffered an adverse employment action when his employment with Entek was terminated. Therefore, plaintiff satisfies the third element of a prima facie case.

Finally, plaintiff did not present any evidence that he was treated differently from Entek employees who are female, nor could plaintiff identify a temporary employee who was not terminated after violating the procedure for reporting an unscheduled absence. (Pl.'s Dep. 103:24-104:1.)  Plaintiff stated that he knew of temporary employees who had missed work and were not terminated but acknowledges that these employees followed procedure and had called in their absence. (Pl.'s Dep. 103:17-23.)

In support of Entek's motion for summary judgment, Entek asserts that its policy is to terminate a temporary employee who does not comply with the call-in procedure for reporting unscheduled absences. (Shimmin Dep. 10:14-17; Elliott Dep. 7:10-13.)  Additionally, at least two temporary employees were similarly terminated for failing to comply with the call-in procedure. (Campbell Decl. ¶ 11.)

Because plaintiff cannot establish that he was treated differently than a temporary employee who does not belong to his

protected class, plaintiff fails to satisfy the fourth element of a prima facie case.

Considering all the elements above, plaintiff has failed to establish a prima facie case under the <u>McDonnell Douglas</u> framework.

*ii. Direct Evidence*

"Direct evidence is 'evidence which, if believed, proves the fact of discriminatory animus without interference or presumption.'" <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640 (9th Cir. 2003)(quoting <u>Goodwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998)).

Plaintiff asserts that he was a victim of disparate treatment based on his gender and failure to exhibit traits of gender stereotype.  As mentioned above, Title VII does not recognize discrimination based on sexual orientation.  However, the United States Supreme Court held that discrimination based on sex-stereotypes constitutes discrimination based on sex. <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 250 (1989).  There, the Supreme Court held that if an employer acts on the basis of belief that a female employee does not match a sex stereotype, the employee has an actionable claim under Title VII for discrimination based on sex. <u>Id.</u> at 250-51.  This holding also applies to a man who is discriminated against for acting too feminine or for not matching a sex stereotype.  <u>Nichols v. Azteca</u>

Page 11 - OPINION AND ORDER

Restaurant Enter., Inc., 256 F.3d 864, 874 (9th Cir. 2001).

To support plaintiff's contention that he was terminated for failing to conform to gender stereotypes, he alleges that he was called a "homo," "fag," "faggot," "Tinker Bell," and "queer" by his co-workers. This is not direct evidence of discrimination by an employer. "Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on [his] gender in making its decisions." Price Waterhouse, 490 U.S. at 251. Here, the comments were made by plaintiff's co-workers, all of whom had no authority to terminate plaintiff's employment. Plaintiff also alleges that his direct supervisor, Guzon, participated in the harassment. However, the record shows that Guzon is not his supervisor but a co-worker who trained plaintiff on the production machinery. It is undisputed that Guzon did not have authority to terminate plaintiff's employment. Where the statement is not made by a decision-maker, plaintiff must "establish a nexus between the alleged discriminatory statement and the decision to terminate." Selby v. Pepsico, Inc., 784 F.Supp. 750, 757 (N.D.Cal. 1991)(quoting DeHorney v. Bank of America Nat. Trust and Sav., 879 F.2d 459, 468 (9th Cir. 1998)). Plaintiff failed to provide any evidence that his co-worker's comments, including Guzon's, had any bearing on Entek's decision to terminate his employment.

In sum, plaintiff did not provide direct evidence of
discrimination and has failed to establish a prima facie case
under the McDonnell Douglas framework.  Therefore, Entek's motion
for summary judgment on plaintiff's disparate treatment claim is
granted.

B. Retaliation

"To establish a prima facie case of retaliation, plaintiff
must show: [(1)] he has engaged in a protected activity; [(2)] he
has suffered an adverse employment decision; and [(3)] there was
a causal link between the protected activity and the adverse
employment decision." Morgan v. Nat'l RR Passenger Corp., 232
F.3d 1008, 1017 (9th Cir. 2000).  To establish causation, the
plaintiff must show "by a preponderance of the evidence that
engaging in the protected activity was one of the reasons for the
firing and that but for such activity the plaintiff would not
have been fired." Ruggles v. Cal. Polytech. State Univ., 797 F.2d
782, 785 (9th Cir. 1986)(quoting Kauffman v. Sidereal Corp., 695
F.2d 343, 345 (9th Cir. 1982)(per curiam)).  "The causal link may
be established by an inference derived from circumstantial
evidence, 'such as the employer's knowledge that the [employee]
engaged in protected activities and the proximity in time between
the protected action and the allegedly retaliatory employment
decision.'" Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir.
1988)(quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.

1987)).

Once plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse action.  When defendant meets this burden, plaintiff must provide evidence that the employer's reason is pretextual.  Jordan, 847 F.2d at 1376.

Entek concedes that plaintiff has established the first two elements of his prima facie case, but argues he fails to establish a causal link between the protected activity and his termination.  Plaintiff asserts that the proximity in time between his complaint to Monarch and his termination is sufficient to establish causation. Parti v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9th Cir. 2004). "When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred." Id. (citing Bell v. Clackamas County, 341 F.3d 858, 865-66 (9th Cir. 2003)).  Here, it is undisputed that plaintiff's complaint and termination occurred in close proximity to each other.  Therefore, plaintiff has raised an inference of causation and satisfied the elements of a prima facie case of retaliation.

Entek now must show a legitimate, non-retaliatory reason for plaintiff's termination.  Entek asserts that plaintiff was a temporary, at-will employee and thus Entek had discretion to terminate plaintiff's employment for any reason not prohibited by

law.  Entek contends that plaintiff was terminated due to his
failure to comply with Entek's call-in procedure for unscheduled
absences.  Elliot stated in his deposition that he had informed
Campbell of plaintiff's "no call/no show" and suggested
plaintiff's termination before he was notified of plaintiff's
complaint to Monarch. (Elliot Dep. 9:21-10:1, 25:18-26:; Campbell
Decl. ¶ 13.)  Additionally, Shimmin approved the decision to
terminate plaintiff's employment before he was notified of
plaintiff's complaint. (Shimmin Dep. 13:16-14:20).  Although
plaintiff asserts that he called in his absence to an Entek
employee 30 minutes prior to his shift, this was not in
compliance with Entek's call-in procedure for unscheduled
absences.  Additionally, Elliot was not aware of this call when
he informed Campbell of plaintiff's absence and thus thought
plaintiff was a "no call/no show".

Entek has provided sufficient evidence to shift the burden
to plaintiff to show that Entek's reason for termination was
pretext.  Plaintiff fails to offer any evidence of pretext.
Aside from proximity in time, there is nothing in the record that
permits a finding that plaintiff's termination, due to his
failure to comply with Entek's call-in procedure, was a pretext
for retaliation.  A plaintiff may not "rely on the proximity in
time between the protected activity and the adverse employment
action to create a triable issue of fact after the employer has

offered legitimate reasons for its actions." <u>Miller v. Fairchild</u> <u>Indus., Inc.</u>, 797 F.2d 727, 731 (9th Cir. 1986).  Because there is nothing more than proximity in time in the record to support a claim of retaliation, Entek's motion for summary judgment on plaintiff's retaliation claim is granted.

    C. <u>Hostile Work Environment</u>

    To survive summary judgment on a hostile work environment claim, plaintiff must "establish 'a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment.'" <u>Nichols</u>, 256 F.3d at 871.  The harassment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher v. City of Boca</u> <u>Raton</u>, 524 U.S. 775, 787 (1998).  Plaintiff must also prove that the harassment took place because of his membership in a protected class.

    When determining whether a workplace is hostile, the court considers all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to

Page 16 - OPINION AND ORDER

discriminatory changes in the terms and conditions of employment." <u>Nichols</u>, 256 F.3d at 872.  "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" <u>Faragher</u>, 524 U.S. at 788 (internal citations omitted).

Plaintiff's claim for hostile work environment fails because he cannot establish that the comments made by his co-workers were due to his gender.

As mentioned above, <u>Price Waterhouse</u> holds that discrimination based on sex-stereotypes is discrimination based on gender.  Plaintiff asserts that the verbal abuse at issue occurred because of his "fail[ure] to exhibit stereotypical traits of masculinity." (Compl. ¶ 24.)  However, plaintiff contradicts this assertion when he states in his deposition that he did not believe he was harassed because he is not masculine. (Pl.'s Dep. 191:24-192:15.)  Additionally, plaintiff testified that he does not believe he has a particularly effeminate appearance or that he was harassed at Entek because he appears effeminate.  Finally, plaintiff also stated that he believed the verbal abuse was due to his sexuality and not his failure to exhibit stereotypical traits of masculinity. (Pl.'s Dep. 85:7-11,

184:24-25.)

Plaintiff fails to provide evidence that the verbal conduct he was subjected to was due to his sex.  Therefore, Entek's motion for summary judgment on plaintiff's hostile work environment claim is granted.

II. Sexual Orientation Discrimination Under Or. Rev. Stat. § 659A.030

A. <u>Disparate Treatment</u>

Oregon Revised Statutes § 659A.030(1)(b) makes it unlawful for an employer to discriminate against an individual because of "race, color, sex, sexual orientation...".  Defendant argues that summary judgment should be granted on plaintiff's sexual orientation claim because the Oregon Revised Statute did not prohibit sexual orientation discrimination in 2007, while plaintiff was employed at Entek.  However, in 1998, the Oregon Court of Appeals held in <u>Tanner v. O.H.S.U</u>., that the prohibitions against discrimination under Or. Rev. Stat. § 659A.030 includes discrimination based on sexual orientation. 145 Or.App. 502, 971 P.2d 435 (1998).

To prevail on a claim of disparate treatment based on sexual orientation, plaintiff must establish a prima facie case of discrimination.  As mentioned above, Oregon Revised Statute § 659A.030 was modeled after Title VII and thus the federal standard for establishing a prima facie case, along with the

Page 18 - OPINION AND ORDER

burden-shifting framework, is used to analyze a disparate
treatment claim under Oregon law.

*I. Circumstantial Evidence*

     Plaintiff has satisfied the first, second, and third
elements of a prima facie case under the <u>McDonnell Douglas</u>
framework.  Plaintiff is a homosexual male and thus belongs to a
protected class.  Both parties agree that plaintiff suffered an
adverse employment action when his employment with Entek was
terminated.  As discussed above, plaintiff has raised an issue of
fact as to his job performance to satisfy the third element of a
prima facie case.

     However, regarding the fourth element, plaintiff has failed
to provide evidence that he was treated differently because of
his sexuality.  Plaintiff did not provide evidence of a
heterosexual temporary employee who was not terminated after
failing to comply with Entek's call in procedure for unscheduled
absences, in fact, the opposite is true.  The record supports
Entek's assertion that at least two temporary employees were
terminated due to their failure to comply with Entek's call-in
procedure.  Therefore, plaintiff has failed to establish a prima
facie case of disparate treatment based on sexuality.

*ii. Direct Evidence*

     Plaintiff asserts that he was a victim of disparate
treatment based on his sexuality.  Plaintiff relies on statements

made by his co-workers, calling plaintiff a "homo," "fag,"
"faggot," "Tinker Bell," and "queer."  Plaintiff also relies on
his co-workers's knowledge of his sexual orientation.  This is
not sufficient direct evidence of disparate treatment based on
sexuality.  As discussed in plaintiff's Title VII claim, there is
no evidence that anyone with the authority to terminate
plaintiff's employment made these comments to plaintiff or was
aware of his sexuality.  Where the statement is not made by a
decision-maker, the plaintiff must "establish a nexus between the
alleged discriminatory statement and the decision to terminate."
Selby, 784 F.Supp. at 757 (quoting DeHorney, 879 F.2d at 468).
Plaintiff did not provide any evidence that the comments made by
his co-workers or that his sexual orientation had any bearing on
Entek's decision to terminate his employment.  In fact, Elliott
stated in his deposition that he was unaware of plaintiff's
sexual orientation when he reported him as a "no call/no show".
(Elliott Dep. 9:21-10:1.)

In sum, plaintiff failed to provide direct evidence of
discrimination and failed to establish a prima facie case under
the McDonnell Douglas framework.  Therefore, Entek's motion for
summary judgment on plaintiff's disparate treatment claim under
Or. Rev. Stat. § 659A.030(1)(b) is granted.

B. Retaliation

Oregon Revised Statutes § 659A.030(1)(f) makes it unlawful

Page 20 - OPINION AND ORDER

for an employer to "discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

The federal standard for establishing a prima facie case of retaliation under Title VII, along with the burden-shifting framework, is used to analyze a retaliation claim under Oregon law.  Here, plaintiff did not provide sufficient evidence to show that his termination was pretext for retaliation based on sexual orientation.  As discussed in plaintiff's Title VII claim, plaintiff established a prima facie case of retaliation that shifted the burden to Entek to show a non-discriminatory reason for plaintiff's termination.  Entek met this burden by providing evidence that the decision to terminate plaintiff, due to his failure to comply with Entek's call-in procedure, was made before Elliott and Campbell knew of plaintiff's complaint to Monarch.  This was sufficient to shift the burden to plaintiff to show that this reason was pretext.  However, plaintiff failed to satisfy this burden and relied solely on proximity in time to support his claim of retaliation.  As discussed above, proximity in time is not sufficient to establish a claim of retaliation after Entek offered a non-discriminatory reason for plaintiff's termination. Therefore, Entek's motion for summary judgment as to plaintiff's

retaliation claim under Or. Rev. Stat. § 659A.030(1)(f) is granted.

    C.    Hostile Work Environment

    Entek does not challenge plaintiff's showing of a hostile work environment based on sexual orientation, but instead challenges Entek's liability for the hostile environment.

    "The relevant standards and burdens pertaining to employer liability vary with the circumstances.  When harassment by co-workers is at issue, the employer's conduct is reviewed for negligence.  When harassment by a supervisor is at issue, an employer is vicariously liable, subject to a potential affirmative defense." Nichols, 256 F.3d at 875 (internal citations omitted).

    First, plaintiff mistakenly relies on Lamb v. Household Credit Services, 956 F.Supp. 1511 (N.D.Cal. 1997); in asserting that Entek is vicariously liable because Guzon, who trained plaintiff and whom plaintiff believed was his supervisor, participated in the harassment.  "However, just because one employee holds a more senior position than another does not necessarily qualify him or her as a supervisor or manager whose knowledge or acts can be imputed to the employer." Id. at 1517. In Lamb, the court defines two types of "management-level employees...first, supervisors possessing substantial authority and discretion to make decisions concerning the terms of the

harasser's or harassee's employment; and second, non-management employees charged with substantial responsibility for relaying employee complaints to management, particularly where management is located away from the workplace." Id.  Because Guzon fell into neither of these categories, Entek is not vicariously liable for his actions.

Next, plaintiff asserts that Entek was negligent because Shimmin and Kenneth Haase (Haase), production supervisors, were aware of offensive language being used in the workplace but did nothing to stop it.  However, defendant asserts that neither Shimmin nor Hasse were aware that plaintiff viewed the offensive language as harassment and thus plaintiff has no actionable claim against Entek.  In making this assertion, defendant relies on Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1187 (9th Cir. 2005)("'When...the only possible source of notice to the employer...is the employee who is being harassed, she cannot withstand summary judgment without presenting evidence that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed.'" (citing McPherson v. City of Waukegan, 379 F.3d 430, 441 n.7 (7th Cir. 2004)).  In Hardage, the court found that offensive behavior witnessed by plaintiff's supervisor was insufficient to put the plaintiff's employer on notice.  Here, plaintiff did not notify Shimmin nor Haase that he felt harassed

Page 23 - OPINION AND ORDER

by his co-workers' offensive comments.  Although Shimmin and

Haase knew that this language was being used in the workplace,

they did not know that plaintiff felt harassed by these comments.

Because Entek was not put on notice of the harassment, Entek was

not negligent for failing to stop the harassment.

Lastly, plaintiff asserts that the remedial measures taken

by Entek to address the harassment were inadequate and thus Entek

is liable for the hostile work environment.  "Notice of the

sexually harassing conduct triggers an employer's duty to take

prompt corrective action that is 'reasonably calculated to end

the harassment.'"  Swenson v. Porter, 271 F.3d 1184, 1192 (9th

Cir. 2001)(quoting Nichols, 256 F.3d at 875)).  "The

reasonableness of the remedy depends on its ability to: (1)'stop

harassment by the person who engaged in the harassment;' and

(2)'persuade potential harassers to refrain from unlawful

conduct.'"  Nichols, 256 F.3d at 875 (quoting Ellison v. Brady,

924 F.2d 872, 882 (9th Cir. 1991)).

Following plaintiff's complaint, Monarch notified Campbell

who then performed an investigation which included meeting with

the named offenders.  The investigation began three days after

plaintiff's complaint.  After the investigation, Campbell

contacted Shimmin, Elliott, Haase, and other floor supervisors

and instructed them to monitor the offenders and remind their

employees not to use offensive language.  Entek then conducted

regular training and employee meetings regarding anti-
discrimination and harassment.  Plaintiff contends this response
was inadequate because no disciplinary measures were taken.
Although no formal disciplinary measures were taken, this was the
first and last complaint of harassment based on sexual
orientation that Entek has received to date.  Campbell warned the
offenders of the consequences in using offensive language and
continued to inquire on the behavior of the offenders even after
plaintiff was terminated.  The remedial measures taken by Entek
were prompt and reasonable to stop the harassment.

In sum, plaintiff has failed to show that Entek is liable
for creating or condoning a hostile work environment.  Therefore,
Entek's motion for summary judgment on plaintiff's hostile work
environment claim is granted.

III.  Intentional Infliction of Emotional Distress (IIED)

To establish a claim for IIED, plaintiff must show that: 1)
defendant intended to cause plaintiff severe emotional distress
or knew with substantial certainty that the conduct would cause
such distress; 2) defendant's conduct extraordinarily
transgressed the bounds of socially acceptable behavior; and 3)
plaintiff in fact suffered severe emotional distress. Sheets v.
Knight, 308 Or. 220, 236, 779 P.2d 1000 (1989)(citing Lewis v.
Oregon Beauty Supply Co., 302 Or. 616, 626, 733 P.2d 430 (1987)).

It is well established in Oregon that the tort of IIED "does

not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life." Hetfeld v. Bostwick, 136 Or.App. 305, 308, 907 P.2d 986 (1995).  "Conduct that is merely rude, boorish, tyrannical, churlish and mean [is insufficient to be actionable, and]...insults, harsh or intimidating words, or rude behavior ordinarily [do not] result in liability even when intended to cause distress." Watte v. Edgar Maeyens, Jr., 112 Or.App. 234, 239, 829 P.2d 479 (1992)(quoting Hall v. The May Dept. Stores, 292 Or. 131, 135, 637 P.2d 126 (1981)); see also Snyder v. Sunshine Dairy, 87 Or.App. 215, 217-18, 742 P.2d 57 (1987)(allegations that employer publicly ridiculed plaintiff and unjustly criticized work performance did not rise to the level of intolerable conduct).

Oregon cases which have allowed claims for IIED typically involve acts of psychological and physical intimidation, racism, or sexual harassment. See Kraemer v. Harding, 159 Or.App. 90, 976 P.2d 1160 (1999)(continued accusations that a school bus driver was a child sex abuser after multiple investigations concluded that no inappropriate conduct occurred); Wheeler v. Marathon Printing, Inc., 157 Or.App. 290, 974 P.2d 207 (1998)(co-worker continued harassment including sexual remarks even after plaintiff attempted suicide); Lathrope-Olson v. Dept. of Transp., 128 Or.App. 405, 876 P.2d 345 (1994)(co-workers called a Native

Page 26 - OPINION AND ORDER

American woman a squaw, stating that a squaw is to walk behind
her man, that all women were good for was between their legs;
locked her out of a work van in the rain and snow; and threatened
to push her into the path of oncoming vehicles); Mains v. II
Morrow, Inc., 128 Or.App. 625, 877 P.2d 88 (1994)(supervisor
touched plaintiff's breasts, shoved plaintiff, grabbed
plaintiff's ankles, blocked plaintiff's car, made daily sexual
comments, and encouraged other men to physically assault
plaintiff); Franklin v. Portland Cmty. Coll., 100 Or.App. 465,
787 P.2d 489 (1990)(supervisor called an African-American male
"boy," issued false reprimands, shoved him, locked him in an
office, and suggested he apply elsewhere for employment).

     Here, plaintiff alleges that his co-workers called him a
"faggot," "queer," and other derogatory terms, and that this
caused him to feel shame, fright, grief, humiliation,
embarrassment, anger, disappointment, and worry.  These actions
do not rise to the level of conduct that extraordinarily
transcends the boundaries of socially acceptable behavior under
Oregon law.  Plaintiff relies on Harris v. Pameco Corp., 170
Or.App. 164, 171, 12 P.3d 524 (2000), in asserting that sexually
harassing language used by an employee may be deemed socially
intolerable.  However, in Harris, defendant subjected plaintiff
to unwanted physical touching in addition to harassing language.
Here, plaintiff was not subjected to physical harassment.

Page 27 - OPINION AND ORDER

Plaintiff also asserts that Entek should be liable for employee's harassing conduct because defendant knew that employees were using offensive language and did nothing to stop it.  However, a defendant's failure to respond to claims of harassment is insufficient to support an IIED claim. Wheeler, 157 Or.App. at 307-08.

Plaintiff has failed to establish an IIED claim and thus Entek's motion for summary judgment is granted.

IV. Reckless Infliction of Emotional Distress (RIED)

Oregon law allows recovery of damages for reckless infliction of emotional distress under three specific circumstances. See, e.g., Navarette v. Nike, Inc., No. 05-1827, 2007 WL 221865, at *4 (D. Or. Jan. 26, 2007)(discussing when damages may be recovered for RIED in Oregon).  First, a plaintiff may recover under RIED when accompanied by physical injury. Drake v. Mut. of Enumclaw Ins. Co., 167 Or.App. 475, 487, n.3, 1 P.3d 1065 (2000).  Second, "Oregon allows recovery for emotional distress without accompanying physical injury under narrow circumstances, including when a defendant's conduct infringes on a plaintiff's legally protected interest." Rathcreber v. Hemenway, Inc., 335 Or. 404, 414, 69 P.3d 710 (2003).  Third, a plaintiff may recover under either reckless or negligent infliction of emotional distress in circumstances where there is a duty to protect against psychological harm. See Id. (discussing

duty to protect from emotional harm in malpractice
context)(citing <u>Curtis v. MRI Imaging Servs.</u>, 327 Or. 9, 14-15,
956 P.2d 960 (1998)); <u>Simons v. Beard</u>, 188 Or.App. 370, 376, 381-
82, 72 P.3d 96 (2003); <u>Shin v. Sunriver Preparatory Sch., Inc.</u>,
199 Or.App. 352, 368-69, 111 P.3d. 762 (2005)(school owed a
heightened duty of care to student to protect from negligently
inflicted emotional harm).

Although plaintiff acknowledges these circumstances in which
recovery of RIED damages are available, plaintiff fails to
provide any argument as to why this relief should be available to
him.  Plaintiff does not assert that he was physically injured by
Entek, nor does plaintiff assert that he had a legally protected
interest that was infringed by Entek, or that Entek had a duty to
protect plaintiff against psychological harm.

The only argument plaintiff asserts is that an employee can
recover RIED damages against his employer because of a special
relationship that exists between an employer and employee.  As
Entek correctly notes, the Oregon Supreme Court held that an
employment relationship does not provide the level of intent
necessary to establish liability for emotional distress. <u>McGanty
v. Staudenraus</u>, 321 Or. 532, 548, 901 P.2d 841 (1995).  Plaintiff
relies on <u>Conway v. Pacific Univ.</u>, 129, Or.App. 307, 310, 879
P.2d 201 (1994) in asserting that an employee may recover against
an employer for REID.  However, the Oregon Court of Appeals in

Page 29 - OPINION AND ORDER

Conway relied on Bodewig v. K-mart, Inc., 54 Or.App. 480, 635
P.2d 657 (1981), the reasoning of which was rejected in McGanty.
See Navarette, 2007 WL 221865 at *3-4; see also, Snead v. Metro.
Prop., 909 F.Supp. 775, 779 (D.Or. 1996).

    Plaintiff has failed to establish an RIED claim and thus
Entek's motion for summary judgment is granted.

V. Wrongful Discharge

    Oregon courts have allowed claims for wrongful discharge if
the employee is fired for performing an important duty or
societal obligation, or if the employee is fired for exercising
statutory rights that relates to the employment and reflects an
important public policy.  Babick v. Or. Arena Corp., 333 Or. 401,
407, 40 P.3d 1059 (2002).

    To prevail on a claim for wrongful discharge, plaintiff must
prove that he was discharged and that the discharge was wrongful.
Moustachetti v. Oregon, 319 Or. 319, 325, 877 P.2d 66 (1994).
Plaintiff must show a causal connection between the exercise of
the employment-related right and the adverse employment action.
Shockey v. City of Portland, 313 Or. 414, 422-23, 837 P.2d 505
(1992).

    Plaintiff has failed to offer any evidence of a causal
connection between his termination and exercise of an employment-
related right or societal obligation.  Therefore, Entek's motion
for summary judgment on plaintiff's claim for wrongful discharge

is granted for the same reasons that summary judgment is granted on plaintiff's retaliation claims above.

CONCLUSION

For the foregoing reasons, Entek's motion for summary judgment (doc. 18) is granted.  Plaintiff's motion to correct the record (doc. 42) is granted as there were no substantive changes to the original record.  Finally, defendant's request for oral argument is denied as unnecessary.  This case is dismissed.

IT IS SO ORDERED.

Dated this  24  day of August 2009.

                                    /s/ Ann Aiken
                                    Ann Aiken
                            United States District Judge

Page 31 - OPINION AND ORDER